Thomson, P. J.
Suit by Mullins & Crigler against Gilligan Brothers on two promissory notes and a balance due on account. According to the complaint, on the 11th day of August, 1894, the plaintiffs sold the defendants, as copartners, merchandise to the amount of $996.11, for a portion of which the defendants executed to the plaintiffs two notes, dated on that day, for $332.02 each, due in four and five months respectively. *14 Nothing was paid on either of the notes or the open balance. Of the defendants, Thomas F. Gilligan made default, and Luke Gilligan answered. By his answer he denied that at any of the times mentioned in the complaint, or at any time since January 1, 1894, he was a member of the firm of Gilligan Brothers.
The evidence for the plaintiffs consisted of the deposition of L. N. Crigler, one of the plaintiffs, and the testimony in open court of B. E. Harris, who at the time of the transaction was a traveling salesman of the plaintiffs. Upon the question of Luke Gilligan’s connection with Gilligan Brothers, or the belief of the plaintiffs that he was a partner, we find nothing tangible in the testimony of Crigler. Harris stated that on March 20, 1893, as agent of the plaintiffs, he sold Gilligan Brothers a bill of goods. It appears from the testimony of Crigler that this bill, as well as another of October 24, 1893, was paid. Harris also stated that he made the sale of March 20, at Gilligan Brothers’ place of business, and that Luke Gilligan was present, and acknowledged himself a partner. Luke Gilligan testified that from April, 1892, until February 6,1893, he was in partnership with his brother, Thomas F. Gilligan, but that oh the latter date he sold his interest to another brother, Patrick J. Gilligan, severed his connection with the firm, and had nothing to do with it afterwards. He said he was not present when Harris sold the bill of March 20; that until the trial he had never seen Harris, and that the statement that he told Harris that he was a member of the firm, was untrue. The testimony of this witness was supported by that of a number of other witnesses. The sale of August 11, was made upon the written order of Gilligan Brothers, and the signature to the order, and also that to the notes, was shown to be in the handwriting of Patrick J. Gilligan. Judgment was rendered in favor of Luke Gilligan, and the plaintiffs have brought the case here by writ of error.
The judgment is conclusive upon the questions of fact involved in the suit. As those questions were resolved in favor *15 of Lulce Gilligan, his statements must be accepted as true. Therefore the testimony of Harris, concerning Luke’s presence and admission when the sale of March 20, was made, cannot be considered, and, eliminating that, there was no evidence from which it might even be inferred that the fact that Luke was at one time a member of the firm of Gilligan Brothers ever came to the knowledge of the plaintiffs, or that in any of their dealings with the firm, his former connection with it cut any figure whatever. The first sale to the firm was made on March 20, 1898, some time after he had ceased to be a partner, so that he was not at the time of the transaction a partner in fact. And the evidence, as it was credited by the court, fails to show that by reason either of his acts or of his negligence, the plaintiffs acquired the right to look to him for payment, or that the goods were sold upon any supposition of his liability. From the facts as found, no estoppel against him can be deduced.
But it is insisted that from other sources the plaintiffs derived the right to believe that Luke was a partner when the first sale to the firm was made, and, not being advised to the contrary, were justified in continuing their dealings with the firm on the faith of Luke’s responsibility as a partner. The evidence on which counsel relies to establish this proposition is the following from the deposition of the plaintiff Crigler:
“ Q. State what information you had during the year 1893 as to who composed the firm of Gilligan Brothers, and give fully the sources of your information ?
“A. Before shipping the bill of March 20,1893, we made inquiries of the commercial agencies of Cincinnati, Ohio, and also our salesman, Mr. R. E. Harris of Denver, Colo., in reference to the financial standing of the firm of Gilligan Brothers. Through these sources we learned that the firm was responsible for a reasonable amount. Mr. Luké Gilligan being so well fixed financially, made the firm entirely responsible for its contracts, Thomas Gilligan being the other member of the firm.”
*16 We find nothing in this to sustain counsel’s contention. The witness did not say what commercial agencies he consulted, or what was their character; neither did he say what information they imparted. The plaintiffs inquired of those agencies, and of their own salesman, concerning the financial standing of the firm, but what the agencies said, or what Harris said, was not disclosed. The testimony is entirely consistent with the supposition, which the other evidence seems to favor, that the sole information which the plaintiffs received concerning Luke’s connection with the firm, came from their agent, Harris. From testimony so indefinite as this, nothing-whatever can be inferred. When the plaintiffs commenced to deal with Gilligan Brothers, it would have been an easy matter to ascertain who composed the partnership. Their agent was on the spot, and could have satisfied himself, and if he deceived his principals, they must look to him. Luke was not a member of the firm when the first bill of goods was sold, and if the plaintiffs supposed that he was, the mistake is chargeable to the negligence of their agent, and his negligence was theirs.
It is said that the court ‘improperly admitted in evidence the bill of sale from Luke to Patrick J., by which Luke’s connection with the firm was terminated, and the reason assigned is that it was not shown that the plaintiffs had any knowledge of it. But at the time the bill of sale was made, they had never dealt with the firm, and it was then a matter of no concern to them what the firm or its members were doing. To say that Luke should have sent them notice of his withdrawal, would be to say that he should have anticipated that they would become creditors of the firm, and to exact of him an insight into the future which is not vouchsafed to man.
After the evidence was in, Luke asked leave to amend his answer so as to show that his membership in the firm ceased in 1893, instead of 1894, as alleged, stating that the latter figures were a mistake. The motion was allowed, and counsel say that the ruling was erroneous. The statement in the abstract in relation to the motion and the ruling, is so meager *17 and indefinite that we are in the dark as to what really took place; but surely the court did not abuse • its discretion in allowing the correction of a mistake.
We see no reason why this judgment should be reversed, and we therefore order its affirmance.-

Affirmed.